AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| RETRACTABLE TECHNOLOGIES, INC. et. al. | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:08-CV-16 |
| BECTON DICKINSON AND COMPANY | ) |
|  | ) (If the action is pending in another district, state where: |
| *Defendant* | )      Eastern District of Texas              ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: International Healthcare Worker Safety Center
1224 Jefferson Park Avenue, Suite 400, Blake Center, Charlottesville, Virginia 22903

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See attached Exhibit A for questions and Exhibit B for documents

| Place: Tremblay & Smith, PLLC | Date and Time: |
|---|---|
| 105-109 East High Street | |
| Charlottesville, Virginia 22902 | 03/28/2011 9:00 am |

The deposition will be recorded by this method:  Fed. R. Civ. P. 31 Deposition by Written Questions

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See attached Exhibit B for documents

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  02/21/2011

*CLERK OF COURT*

_____          OR   _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  **PLAINTIFFS**
RETRACTABLE TECHNOLOGIES, INC. and THOMAS J. SHAW           , who issues or requests this subpoena, are:
Stephen D. Wilson, Locke Lord Bissell & Liddell LLP
Address: 2200 Ross Avenue, Suite 2200, Dallas, Texas 7520-6776
E-mail: swilson@lockelord.com  Telephone: 214-740-8651

**EXHIBIT A**

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:08-CV-16

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

  ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

  ☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

            _____
            *Server's signature*

            _____
            *Printed name and title*

            _____
            *Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT A

## DEPOSITION ON WRITTEN QUESTIONS

Custodian of Records for: International Healthcare Worker Safety Center, 1224 Jefferson Park Avenue, Suite 400, Blake Center, Charlottesville, Virginia 22903.

Type of Records: Any and all records and/or documents as described in the attached Exhibit "B".

Directions: For the purpose of these questions, the term "all previously produced documents" means the documents produced by the International Healthcare Worker Safety Center on December 10, 2007 with bates numbers: JJ-0100001-JJ-0102206 and UVA/RTI 000001-UVA/RTI 000287.

1. Please state your full name, business address and occupation.

Answer: _____

2. Have you been served with a subpoena duces tecum for the production of any and all documents as set forth in "Exhibit B"?

Answer: _____

3. Do you understand the subpoena requests all responsive records and documents in your possession and is not limited to just records and documents related to what you feel are relevant, nor is it limited in time and scope or as to the type of record or document?

Answer: _____

4. Please state whether or not you are the Custodian of Records of the International Healthcare Worker Safety Center.

Answer: _____

5. Has the International Healthcare Worker Safety Center retained any documents responsive to Exhibit "B" of the subpoena duces tecum?

Answer: _____

6. Are these documents, outlined in the subpoena duces tecum, and all previously produced documents in your custody or subject to your control, supervision or direction?

Answer: _____

1

7. Please hand to the Officer taking this deposition copies of the documents outlined in the subpoena duces tecum. Have you complied? If not, why?

Answer:_____

8. Are the copies which you have handed to the Officer taking this deposition true and correct copies of such documents, memoranda, reports, claim records, or data compilations?

Answer:_____

9. Are the copies of all previously produced documents true and correct copies of such documents, memoranda, reports, claim records, or data compilations?

Answer:_____

10. For the documents referenced in Questions 8 and 9, are such documents, memoranda, reports, claim records, or data compilations kept in the regular course of business for the International Healthcare Worker Safety Center?

Answer:_____

11. If your answer to the preceding question was not entirely in the affirmative, please list and identify each document which was kept in the regular course of business for the International Healthcare Worker Safety Center.

Answer:_____

12. For the documents referenced in Questions 8 and 9, was it in the regular course of business of the International Healthcare Worker Safety Center for a person with knowledge of the acts, events, transactions and/or payments recorded to make the record or to transmit information thereof to be included in such record or document?

Answer:_____

13. If your answer to the preceding question was not entirely in the affirmative, please list and identify each document for which it was in the regular course of business of the International Healthcare Worker Safety Center for a person with knowledge of the acts, events, transactions and/or payments recorded to make the record or to transmit information thereof to be included in such record or document.

Answer:_____

14. For the documents referenced in Questions 8 and 9, were the document entries made at or shortly after the time of the transaction recorded on them?

2

Answer:_____

15. If your answer to the preceding question was not entirely in the affirmative, please list and identify each document on which the entries were made at or shortly after the time of the transaction recorded on it.

Answer:_____

16. For the documents referenced in Questions 8 and 9, are you able to identify these documents and records as the originals or true and correct copies of the originals?

Answer:_____

17. Have you been requested, directed, or has it ever been suggested by any person (whether a International Healthcare Worker Safety Center employee, representative, attorney or anyone else) that any part of the records subject to this deposition be withheld or protected from discovery for any reason? If so, please state the name and address of the person who conveyed this information to you and when such event occurred.

Answer:_____

18. Do you know whether or not, or do you have any reason to believe that the records subject or responsive to this deposition and the subpoena duces tecum or all previously produced documents have in any manner been edited, purged, culled or in any other manner made different from the way such records existed when created? If so, please explain your knowledge or belief in the regard.

Answer:_____

19. Are there any other locations where records or documents relating to the documents requested as set forth in Exhibit "B" or all previously produced documents would be kept by the International Healthcare Worker Safety Center? If yes, please identify the name and address of that location if known.

Answer:_____

20. In the event that no records can be found, are there document archives (i.e. microfiche) or document retention polices which explain their absence? If yes, identify who has knowledge of those archives or policies for the International Healthcare Worker Safety Center.

Answer:_____

3

_____
WITNESS (Custodian of Records)

    Before me, the undersigned authority, on this day personally appeared _____
_____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of original records.

    SWORN TO AND SUBSCRIBED before me, this _____ day of _____, 2010.

_____
NOTARY PUBLIC

My Commission Expires:_____

4

EXHIBIT B

**SUBPOENA DUCES TECUM**

YOU ARE COMMANDED to produce and permit inspection, copying, testing, or sampling of the following books, documents, electronically stored information, or tangible things at the place, date, and time previously specified:

1. Please produce all data reported to the Exposure Prevention Information Network ("EPINet") data-sharing network for each year that the EPINet data-sharing network has existed—redact any data identifying individuals. Please produce the data in a computer-readable form suitable for analyzing in the most current published version of EPINet™ for Access® software; data that cannot be produced in that form may be produced on paper. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

2. Please produce all "Needlestick and Sharp Object Injury Reports" collected by or submitted to the International Healthcare Worker Safety Center ("Center"), however submitted or collected, whether electronically, orally, in writing, or by other means for each year that the EPINet data-sharing network has existed—redact any data identifying individuals. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

3. Please produce all "Blood and Body Fluid Exposure Reports" collected by or submitted to the Center, however submitted or collected, whether electronically, orally, in writing, or by other means for each year that the EPINet data-sharing network has existed—redact any data identifying individuals. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

4. Please produce all "Postexposure Follow-Up" collected by or submitted to the Center, however submitted or collected, whether electronically, orally, in writing, or by other means for each year that the EPINet data-sharing network has existed—redact any data identifying individuals. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

For the request numbers 5 – 9, 11 – 14 below, please refer to Exhibit C (copy of EPINet form, titled "Needlestick & Sharp Object Injury Report").

5. For each sharps injury involving a "Needle-*Hollow Bore*" device reported to the Center through EPINet, please produce all documents and data concerning the "Brand/Manufacturer of Product" involved in the injury. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

1

6. For each sharps injury involving a "Needle-*Hollow Bore*" device reported to the Center through EPINet, please produce all documents and data concerning the "Model" involved in the injury. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

7. For each sharps injury involving a "Needle-*Hollow Bore*" device reported to the Center through EPINet, please produce all documents and data concerning whether the device involved in the injury was a "Safety Design." This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

8. For each sharps injury involving a "Needle-*Hollow Bore*" device reported to the Center through EPINet, please produce all documents and data concerning whether the device involved in the injury had its "Protective Mechanism Activated." This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

9. For each sharps injury involving a "Needle-*Hollow Bore*" device reported to the Center through EPINet, please produce all documents and data concerning whether the device involved in the injury had a needle that was contaminated and, if so, whether blood was on the device. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

10. For each needlestick reported to the Center or anyone affiliated with the Center, please produce all documents and data concerning the syringe, phlebotomy device, or other needle-bearing device involved with each needlestick, including, without limitation, the type and brand, make and manufacturer, or other identifying information of each syringe or phlebotomy device involved in each, every and any reported needlestick incident of which the person has any knowledge. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

11. Please produce all documents or communications concerning the reasons and/or decision not to report the "Brand/Manufacturer of Product" data and/or "Model" data pertaining to "Needle-*Hollow Bore*" sharps injuries on the EPINet web site.

12. Please produce all documents or communications concerning decisions or reasons that "Brand/Manufacturer of Product" data and/or "Model" data pertaining to "Needle-*Hollow Bore*" sharps injuries would not be reported in *Advances in Exposure Prevention*.

13. Please produce all documents concerning your practices or policies regarding reporting to, sharing with, or withholding from any persons not in your employ the "Brand/Manufacturer of Product" data and/or "Model" data pertaining to "Needle-*Hollow Bore*" sharps injuries gathered through the EPINet data-sharing network or any other source.

2

14. Please produce all documents concerning the reasons that "Brand/Manufacturer of Product" data and/or "Model" data pertaining to "Needle-*Hollow Bore*" sharps injuries is not retained by the Center.

15. Please produce "Brand/Manufacturer of Product" data, "Manufacturer" data, "Equipment Type" data, "Model" data, and/or any other data identifying brand, manufacturer, or model for each of the blood exposure incidents for which the Center has such data. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

16. Please produce all other documents submitted by third-parties concerning needlestick injuries and blood exposure, not encompassed within the preceding requests, which were collected by or submitted to the Center, however submitted or collected, whether electronically, orally, in writing, or by other means. This request only seeks the raw data submitted by third-parties and in no way seeks any analysis, manipulation, or processing of the data by the Center or anyone affiliated with the Center.

17. Please produce a copy of the EPINet™ for Access® software program in its most current published version including any User Name or Password needed.

18. Please produce all documents sufficient to identify entities that have ordered the EPINet™ for Access® software program in any version, including, but not limited to e-mail or other electronic communications from the Center or anyone affiliated with the Center to hospitals attaching the EPINet™ for Access® software program.

19. For each year that the EPINet data-sharing network has existed, please produce a list of all hospitals that have participated in the EPINet data-sharing network for that year.

20. Please produce documents sufficient to identify each hospital that contributed EPINet surveillance data to your multi-hospital research database.

21. Please produce a copy of each version of the EPINet form "Blood and Body Fluid Exposure Report."

22. Please produce all documents concerning the reason that the EPINet form "Blood and Body Fluid Exposure Report" bears a marking indicating that its copyright belongs to "Becton Dickinson and Company."

23. Please produce all documents concerning the reason that the EPINet form "Needlestick & Sharp Object Injury Report" bears a mark indicating that its copyright belongs to "Becton Dickinson and Company."

24. Please produce documents sufficient to show all funding, compensation, or other consideration that the Center or its employees have received from Becton Dickinson and Company ("BD").

3

25. Please produce documents sufficient to show all funding, compensation, or other consideration that the Center or its employees have received from any entity or organization other than BD.

26. Please produce all documents, including agreements, letters of understanding, memoranda, and the like, relating to or reflecting the BD sponsorship or funding of EPINet and/or the EPINet data-sharing network.

27. Please produce all documents concerning funding EPINet, and/or the EPINet data-sharing network received from any entity or organization other than BD.

28. Please produce all documents concerning the support by BD or any other BD-related entity provided to *Advances in Exposure Prevention* or the Center.

29. Please produce all documents concerning funding for *Advances in Exposure Prevention* from any entity or organization other than BD.

30. Please produce all documents concerning bulk subscriptions purchased by BD, including, but not limited to bulk subscriptions for *Advances in Exposure Prevention*.

31. Please produce all documents concerning educational grants provided by BD that in any way support the International Health Care Worker Safety Center, *Advances in Exposure Prevention*, or EPINet.

32. Please produce a copy of each issue, since the beginning of publication, of the Center's bi-monthly publication *Advances in Exposure Prevention* except for Vol. 4 No. 2 through Vol. 6 No. 1 and Vol. 6 No. 3 through Vol. 7 No. 4.

33. Please produce all documents concerning payments, after the year 1999, from BD or any of its affiliates or subsidiaries, to any and each of the following individuals: Melanie Bentley, Susan Hayes, Janine Jagger, Ginger Parker, Jane Perry, Elayne Phillips, and Patti Tereskerz.

34. Please produce all documents relating to BD or any of its affiliates or partners as an actual or potential source of funding of the Center and any related or affiliated research organizations not encompassed within the preceding requests.

35. Please produce all publications, including, but not limited to articles, PowerPoint presentations, speeches, notes, editorials, or books created or contributed to by anyone affiliated with the Center that display, state, show, or in any manner reference BD including, but not limited to BD products, services, or donations.

36. Please produce all correspondence, including, but not limited to e-mail or other electronic correspondence, letters, notes, and cards created or contributed to by anyone affiliated with the Center that display, state, show, or in any manner reference BD including, but not limited to BD products, services, or donations.

37. Please produce all documents relating to or reflecting anyone affiliated with the Center's work as an expert or consultant, either formally or informally, whether or not compensated, for BD.

38. Please produce all documents relating to or reflecting anyone affiliated with the Center's work as an expert or consultant, either formally or informally, whether or not compensated, for any entity or organization other than BD.

39. Please produce all documents that the Center or anyone affiliated with the Center has provided to BD.

40. Please produce all documents that BD has provided to the Center or to anyone affiliated with the Center.

41. Please produce all documents concerning any communication between the Center or anyone affiliated with the Center and Erika Bajars (or Erika McGovern), Dan Carrington, Gary Cohen, Andrew Guhl, Dan Grimm, Roger Hankin, Bruce Hector, Andrew Isaacs, Yumiko Hosomi, Camilla Jenkins, Craig Newman, Kenneth Powell, Zeil Rosenberg, Seymour Schlager, Bob Schuchard, Jennifer Schutz, Kevin Seifert, Shrita Smith, Julie Toma, Virginia Tseperis, Bette Weber, E.A. Weber, Michele Wootten (or Michele Longo), Adam Yates, or "Cecilia" (who works or formally worked at BD).

42. Please produce all documents concerning communications by the Center or anyone affiliated with the Center with BD or its agents, employees, officers, or other representatives, not covered by the previous requests.

43. Please produce all documents or data, including, but not limited to tests, studies, or reports regarding the dead space, ullage, or waste space of any of the following 1ml or 3ml syringes or syringe-needle combinations: BD Integra, Eclipse, SafetyGlide or Safety-Lok, RTI VanishPoint, or BD conventional.

44. Please produce all documents or data pertaining to the effect of needle sharpness on patient comfort.

45. Please produce all documents or data, including, but not limited to tests, studies, or reports concerning the sharpness of syringe needles or phlebotomy (blood draw) needles, including without limit, documents concerning BD's claim to have the "world's sharpest needle" or claims to that effect.

46. Please produce all data, including, but not limited to tests, studies, or reports that the Retractable VanishPoint® syringe, when used as intended, harms, hurts, or otherwise causes a patient trauma that would not normally occur in similar circumstances, but for in-patient retraction.

47. Please produce all documents or data, concerning splatter associated with safety syringes, including, but not limited to tests, studies, or reports concerning the amount of splatter associated with particular brands, models or makes, the danger of nosocomial or hospital-

acquired infections from splatter on patients, heath-care providers, or surrounding surfaces, whether the Retractable VanishPoint® syringe causes splatter outside of the patient when in-patient retraction is properly administered or whether the splatter resulting from the recommended out-of-patient retraction of the Safety-Lok, SafetyGlide, Eclipse, or BD Integra presents any health risk.

48. Please produce all speeches any person affiliated with the Center has given to any organization or group regarding needlestick injuries, needlestick legislation, safety technology, or similar topics.

49. Please produce all PowerPoint or similar presentations any person affiliated with the Center has made regarding needlestick injuries, needlestick legislation, safety technology, or similar topics.

50. Please produce all transcripts, notes, and all other documents relating to or reflecting testimony anyone affiliated with the Center has given in any lawsuit, or at any hearing or other proceeding regarding needlestick injuries, needlestick legislation, safety technology, or similar topics.

51. Please produce all reports, documents, or other materials the Center or anyone affiliated with the Center has distributed or otherwise made available at the occasion of any testimony anyone affiliated with the Center has given in any lawsuit or at any hearing or in connection with any proceeding regarding needlestick injuries, needlestick legislation, safety technology, or similar topics.

52. Please produce all documents or communications regarding any speech, conference, or other meeting attended by anyone affiliated with the Center that was sponsored in whole or in part by BD, or any of its affiliates or subsidiaries.

53. Please produce all documents sufficient to identify all lawsuits, by case name, case number, and court, to which the Center or anyone affiliated with the Center has been a party, relating to any hypodermic product, needlestick injury, or technology concerning hypodermic products.

54. Please produce all documents provided by the Center or anyone affiliated with the Center to legislators or government agencies concerning healthcare worker safety policy and/or potential consequences of policies and legislation related to needle safety.

55. Please produce documents sufficient to identify by name, date, and location, all conferences touching on needlestick injuries or needlestick safety in which the Center or the Center's personnel have participated in on or after July 4, 2004.

56. Please produce all documents concerning the decision to invite, to not invite, or to dis-invite any person who was affiliated with Retractable Technologies, Inc. from attending or participating in a conference in which the Center or persons affiliated with the Center participated.

6

In producing the requested documents and data you are commanded to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The requests do not seek production of individually identifiable health information, and you are not to produce documents or data containing individually identifiable health information in response to the above requests.

For example, needlestick data should not be produced with a name; date of birth; social security number; street address; telephone number; fax number; e-mail address; social security number; certificate/ license number; vehicle identifier or serial number; URLs or IP addresses; full face photo; or any other comparable images or information that may reveal the identity of an individual suffering a needlestick or resulting infection.

To the extent that these requests implicate documents previously produced to Retractable Technologies, Inc. ("Retractable") in response to subpoenas issued on December 6, 2001 or November 6, 2007, Retractable is not seeking the re-production of any such cumulative documents.

EXHIBIT C

# Needlestick & Sharp Object Injury Report

**EPINet™**
FOR MICROSOFT ACCESS
EXPOSURE PREVENTION
INFORMATION NETWORK

Last Name: _____ First Name: _____

Injury ID: (for office use only) S____ Facility ID: (for office use only) ____ Completed By: ____

1) Date of injury: ☐☐ ☐☐ ☐☐☐☐  2) Time of injury: ☐☐ ☐☐

3) Department where Incident Occurred: _____

4) Home Department: _____

5) What is the Job Category of the Injured Worker: (check one box only)
   ☐ 1 Doctor *(attending/staff)*; specify specialty _____
   ☐ 2 Doctor *(intern/resident/fellow)* specify specialty _____
   ☐ 3 Medical Student
   ☐ 4 Nurse: specify   ☐ 1 RN
   ☐ 5 Nursing Student   ☐ 2 LPN
   ☐ 18 CNA/HHA   ☐ 3 NP
   ☐ 6 Respiratory Therapist   ☐ 4 CRNA
   ☐ 7 Surgery Attendant   ☐ 5 Midwife
   ☐ 8 Other Attendant
   ☐ 9 Phlebotomist/Venipuncture/IV Team
   ☐ 10 Clinical Laboratory Worker
   ☐ 11 Technologist *(non-lab)*
   ☐ 12 Dentist
   ☐ 13 Dental Hygienist
   ☐ 14 Housekeeper
   ☐ 19 Laundry Worker
   ☐ 20 Security
   ☐ 16 Paramedic
   ☐ 17 Other Student
   ☐ 15 Other, describe: _____

6) Where Did the Injury Occur? (check one box only)
   ☐ 1 Patient Room
   ☐ 2 Outside Patient Room *(hallway, nurses station, etc.)*
   ☐ 3 Emergency Department
   ☐ 4 Intensive/Critical Care unit: specify type: _____
   ☐ 5 Operating Room/Recovery
   ☐ 6 Outpatient Clinic/Office
   ☐ 7 Blood Bank
   ☐ 8 Venipuncture Center
   ☐ 9 Dialysis Facility *(hemodialysis and peritoneal dialysis)*
   ☐ 10 Procedure Room *(x-ray, EKG, etc)*
   ☐ 11 Clinical Laboratories
   ☐ 12 Autopsy/Pathology
   ☐ 13 Service/Utility *(laundry, central supply, loading dock, etc)*
   ☐ 16 Labor and Delivery Room
   ☐ 17 Home-care
   ☐ 14 Other, describe: _____

7) Was the Source Patient Identifiable? (check one box only)
   ☐ 1 Yes   ☐ 2 No   ☐ 3 Unknown   ☐ 4 Not Applicable

8) Was the Injured Worker the Original User of the Sharp Item? (check one box only)
   ☐ 1 Yes   ☐ 2 No   ☐ 3 Unknown   ☐ 4 Not Applicable

9) The Sharp Item was: (check one box only)
   ☐ 1 Contaminated (known exposure to patient or contaminated equipment)   was there blood on the device?   ☐ 1 Yes
   ☐ 2 Uncontaminated (no known exposure to patient or contaminated equipment)   ☐ 2 No
   ☐ 3 Unknown

10) For What Purpose was the Sharp Item Originally Used? (check one box only)
    ☐ 1 Unknown/Not Applicable
    ☐ 2 Injection, Intra-muscular/Subcutaneous, or Other Injection through the Skin *(syringe)*
    ☐ 3 Heparin or Saline Flush *(syringe)*
    ☐ 4 Other Injection into *(or aspiration from)* IV injection site or IV Port *(syringe)*
    ☐ 5 To Connect IV line *(intermittent IV/piggyback/IV infusion/other IV line connection)*
    ☐ 6 To Start IV or Set up Heparin Lock *(IV catheter or winged set-type needle)*
    ☐ 7 To Draw Venous Blood Sample
    ☐ 8 To Draw Arterial Blood Sample   If used to draw blood was it? ☐ Direct stick?   ☐ Draw from a Line?
    ☐ 16 To Place an Arterial/Central Line
    ☐ 9 To Obtain a Body Fluid or Tissue Sample *(urine/CSF/amniotic fluid/other fluid, biopsy)*
    ☐ 10 Finger stick/Heel Stick
    ☐ 11 Suturing
    ☐ 12 Cutting
    ☐ 17 Drilling
    ☐ 13 Electrocautery
    ☐ 14 To Contain a Specimen or Pharmaceutical *(glass item)*
    ☐ 15 Other; Describe _____

11) Did the Injury Occur? (check one box only)
    ☐ 1 Before Use of Item *(item broke/slipped, assembling device, etc.)*
    ☐ 2 During Use of Item *(item slipped, patient jarred item, etc)*
    ☐ 15 Restraining patient
    ☐ 3 Between Steps of a Multi-step Procedure *(between incremental injections, passing instruments, etc.)*
    ☐ 4 Disassembling Device or Equipment
    ☐ 5 In Preparation for Reuse of Reusable Instrument *(sorting, disinfecting, sterilizing, etc.)*
    ☐ 6 While Recapping Used Needle
    ☐ 7 Withdrawing a Needle from Rubber or Other Resistant Material *(rubber stopper, IV port, etc.)*
    ☐ 16 Device Left on Floor, Table, Bed or Other Inappropriate Place
    ☐ 8 Other After Use-Before Disposal *(In transit to trash, cleaning, sorting, etc.)*
    ☐ 9 From Item Left On or Near Disposal Container
    ☐ 10 While putting Item Into Disposal Container
    ☐ 11 After Disposal, Stuck by Item Protruding from Opening of Disposal Container
    ☐ 12 Item Pierced Side of Disposal Container
    ☐ 13 After Disposal, Item Protruded from Trash Bag or Inappropriate Waste Container
    ☐ 14 Other: Describe: _____

1 of 3

12) What Type of Device Caused the Injury? (check one box only)
- ☐ Needle-*Hollow Bore*
- ☐ Surgical
- ☐ Glass

Which Device Caused the Injury? (check one box from one of the three sections only)

**Needles** *(for suture needles see "surgical instruments")*
- ☐ 1  Disposable Syringe
  - ☐ a  Insulin
  - ☐ b  Tuberculin
  - ☐ c  24/25-gauge needle
  - ☐ d  23-gauge needle
  - ☐ e  22-gauge needle
  - ☐ f  21-gauge needle
  - ☐ g  20-gauge needle
  - ☐ h  "Other"
- ☐ 2  Pre-filled cartridge syringe (includes Tubex™ *, Carpuject ™ * - type syringes)
- ☐ 3  Blood gas syringe (ABG)
- ☐ 4  Syringe, other type
- ☐ 5  Needle on IV line *(includes piggybacks & IV line connectors)*
- ☐ 6  Winged steel needle *(includes winged-set type devices)*
- ☐ 7  IV catheter stylet
- ☐ 8  Vacuum tube blood collection holder/needle *(includes Vacutainer™ *-type device)*
- ☐ 9  Spinal or Epidural Needle
- ☐ 10 Unattached hypodermic needle
- ☐ 11 Arterial catheter introducer needle
- ☐ 12 Central line catheter needle *(cardiac, etc.)*
- ☐ 13 Drum catheter needle
- ☐ 14 Other vascular catheter needle *(cardiac, etc.)*
- ☐ 15 Other non-vascular catheter needle *(ophthalmology, etc.)*
- ☐ 28 Needle, not sure what kind
- ☐ 29 Other needle, please describe: _____

**Surgical Instrument or Other Sharp Items** *(for glass items see "glass")*
- ☐ 30 Lancet (finger or heel sticks)
- ☐ 31 Suture needle
- ☐ 32 Scalpel, reusable *(scalpel, disposable code is 45)*
- ☐ 33 Razor
- ☐ 34 Pipette *(plastic)*
- ☐ 35 Scissors
- ☐ 36 Electro-cautery device
- ☐ 37 Bone cutter
- ☐ 38 Bone chip
- ☐ 39 Towel clip
- ☐ 40 Microtome blade
- ☐ 41 Trocar
- ☐ 42 Vacuum tube *(plastic)*
- ☐ 43 Specimen/Test tube *(plastic)*
- ☐ 44 Fingernails/Teeth
- ☐ 45 Scalpel, disposable
- ☐ 46 Retractors, skin/bone hooks
- ☐ 47 Staples/Steel sutures
- ☐ 48 Wire *(suture/fixation/guide wire)*
- ☐ 49 Pin *(fixation, guide pin)*
- ☐ 50 Drill bit/bur
- ☐ 51 Pickups/Forceps/Hemostats/Clamps
- ☐ 58 Sharp item, not sure what kind
- ☐ 59 Other sharp item: Describe: _____

**Glass**
- ☐ 60 Medication ampule
- ☐ 61 Medication vial *(small volume with rubber stopper)*
- ☐ 62 Medication/IV bottle *(large volume)*
- ☐ 63 Pipette *(glass)*
- ☐ 64 Vacuum tube *(glass)*
- ☐ 65 Specimen/Test tube *(glass)*
- ☐ 66 Capillary tube
- ☐ 67 Glass slide
- ☐ 78 Glass item, not sure what kind
- ☐ 79 Other glass item: Describe: _____

12a) Brand/Manufacturer of Product: (e.g. ABC Medical Company) _____
12b) Model:
- ☐ 98 Please Specify: _____
- ☐ 99 Unknown

13) If the Item Causing the Injury was a Needle or Sharp Medical Device, Was it a" Safety Design" with a Shielded, Recessed, Retractable, or Blunted Needle or Blade?
- ☐ 1  Yes
- ☐ 2  No
- ☐ 3  Unknown

13a) Was the Protective Mechanism Activated?
- ☐ 1 Yes, fully
- ☐ 2 Yes, partially
- ☐ 3 No
- ☐ 4 Unknown

13b) Did Exposure Incident Happen?
- ☐ 1 Before activation
- ☐ 2 During activation
- ☐ 3 After activation
- ☐ 4 Unknown

14) Mark the Location of the Injury:

2 of 3

9

15) Was the injury?
- ☐ 1  Superficial *(little or no bleeding)*
- ☐ 2  Moderate *(skin punctured, some bleeding)*
- ☐ 3  Severe *(deep stick/cut, or profuse bleeding)*

16) If Injury was to the hand, did the Sharp Item Penetrate?
- ☐ 1  Single pair of gloves
- ☐ 2  Double pair of gloves
- ☐ 3  No gloves

17) Dominant Hand of the Injured Worker:
- ☐ 1  Right-handed
- ☐ 2  Left-handed

18) Describe the Circumstances Leading to this Injury *(please note if a device malfunction was involved)*:
_____
_____
_____

19) For Injured Healthcare Worker: If the Sharp had no Integral Safety Feature, Do you have an Opinion that such a Feature could have prevented the injury?   ☐ 1 Yes   ☐ 2 No   ☐ 3 Unknown
Describe: _____
_____
_____

20) For Injured Healthcare Worker: Do you have an Opinion that any other Engineering Control, Administrative or Work Practice could have prevented the injury?   ☐ 1 Yes   ☐ 2 No   ☐ 3 Unknown
Describe: _____
_____
_____

Cost:

| | |
|---|---|
| _____ | Lab charges (Hb, HCV, HIV, other) |
| | Healthcare Worker |
| | Source |
| _____ | Treatment Prophylaxis (HBIG, Hb vaccine, tetanus, other) |
| | Healthcare Worker |
| | Source |
| _____ | Service Charges (Emergency Dept, Employee Health, other) |
| _____ | Other Costs (Worker's Comp, surgery, other) |
| _____ | TOTAL (round to nearest dollar) |

Is this incident OSHA reportable?   ☐ 1 Yes   ☐ 2 No   ☐ 3 Unknown
If Yes, Days Away from Work? _____
Days of Restricted Work Activity? _____

Does this incident meet the FDA medical device reporting criteria? (Yes if a device defect caused serious injury necessitating medical or surgical intervention, or death occurred within 10 works days of incident.)
☐ 1 Yes *(If Yes, follow FDA reporting protocol.)*   ☐ 2 No

---

* Tubex™ is a trademark of Wyeth Ayers; Carpuject™ is a trademark of Sanofi Winthrop; VACUTAINER™ is a trademark of Becton Dickinson. Identification of these products does not imply endorsement of these specific brands.

3 of 3

10



# UNIVERSITY of VIRGINIA

### OFFICE of the GENERAL COUNSEL

March 16, 2011

**By E-mail (ELange@lockelord.com) and U.S. Mail**

Ethan Lange, Esq.
Locke Lord Bissell & Liddell, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

**Retractable Technologies, Inc. et al. v. Becton Dickinson & Co.**
**(E.D. Tex., Marshall Div., Case No. 2:08-CV-16)**

Dear Ethan:

    I write to confirm our conversation yesterday in which I advised that I will accept service of the subpoena issued in the above matter to the International Healthcare Worker Safety Center (the "Center") at the University of Virginia.

    Service will be deemed effective as of the date of this letter and our acceptance of service does not waive or otherwise diminish any right or defense the University may hereafter assert with respect to the subpoena.

    As we discussed, I welcome an opportunity to discuss with you and Stephen the appropriate scope of discovery directed to the Center, a non-party, before engaging in motions practice before the local district court. My hope is that based on the two prior document productions by the Center to RTI, and the information we have shared regarding the scope of information collected by the Center and its relevance to the above litigation, the need for additional discovery from the Center can be substantially circumscribed or eliminated altogether. As I mentioned, I am away from the office for the remainder of this week, but will be available to discuss these issues with you next week at your convenience.

    Thank you again for your consideration.

Sincerely,

Barry T. Meek
Associate General Counsel

cc:    Stephen D. Wilson, Esq.

Madison Hall • P.O. Box 400225
Charlottesville, VA 22904-4225
Phone: 434-924-3586

**EXHIBIT B**