# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| RETRACTABLE TECHNOLOGIES, INC. and THOMAS J. SHAW,<br>        *Movants,*<br><br>v.<br><br>INTERNATIONAL HEALTHCARE WORKER SAFETY CENTER<br>        *Respondent.* | MISC. NO. 3:11-MC-28<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Respondent International Healthcare Worker Safety Center ("Center") comes before the court seeking reconsideration of this court's order of June 30, 2011, compelling the Center to comply with a subpoena *duces tecum* served upon it in connection with an action pending in the Eastern District of Texas, *Retractable Technologies, Inc. v. Becton, Dickinson and Co.,* No. 2:08-cv-00016 (E.D. Tex. filed 2008) (the "underlying action"). The Center further moves to quash the said subpoena pursuant to Rules 26 and 45. As the Center fails to make a sufficient showing that reconsideration is proper, I will deny the motion. (docket no. 9).

**I.**

Retractable Technologies, Inc., ("Retractable Technologies"), the plaintiff in the underlying action, makes and sells a safety syringe that is designed to eliminate contaminated accidental needlestick injuries. Becton, Dickinson and Company ("BD"), the defendant in that case, is a competitor. The Center, a research group at the University of Virginia, has acknowledged that it receives about one third of its outside funding from BD, and that BD has endowed a professorship at the Center. Among other things, the Center collects data on

1

accidental needlestick injuries from hospitals through the Exposure Prevention Information Network ("EPINet").

Retractable Technologies brought the underlying action as a combined action for patent infringement, false advertising, antitrust violations, and related state law claims. The patent claims were severed and tried separately. Among the issues in the underlying action are the soundness of certain safety claims that BD has made about its products, and any efforts that BD may have taken to co-opt or suppress research related the efficacy of its products. Information concerning product-specific injury rates, the Center's data collection practices, and any influence that BD may have had on such practices appears to be germane to the underlying action. Retractable Technologies filed the subpoena at issue in this case with the intention of uncovering information concerning those issues.

Retractable Technologies served the Center with the subpoena in issue on March 16, 2011. By March 28, 2011, the deadline to produce documents and data in accordance with the subpoena lapsed. As of that date, the Center had not produced any of the documents sought, filed objections, or sought other relief that might have been available pursuant to Rules 45 and 26. Accordingly, Retractable Technologies filed a motion to compel on June 9, 2011. On June 17, 2011, the parties agreed, pursuant to the Center's request, to extend the deadline to file an opposition to the motion to compel to July 11, 2011. However, the Center did not move for an extension of time, or otherwise inform the court of the agreement. Considering the motion to compel unopposed, I granted the relief sought on June 30, 2011, and ordered the Center to comply with the subpoena. On July 11, 2011, the agreed upon deadline to submit an opposition lapsed. Then, on July 14, 2011, the Center filed the instant motion for reconsideration. On July

15, 2011, the deadline to comply with the court's order on the motion to compel lapsed. However, the Center did not comply with the order.

## II.

The Center bears the burden of showing that reconsideration is justified. *See In re A.H. Robins Co.*, No. 94-2639, 1996 WL 279077, at *2 (4th Cir. May 28, 1996) (unpublished opinion). Rules 59(e) and 60(b) govern reconsideration of final orders. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). However, interlocutory orders are not subject to the strictures of those rules, and may be reconsidered "as justice requires." *Fayetteville Investors*, 936 F.2d at 1473. "Discovery orders are 'inherently interlocutory' . . . ." *Nicholas v. Wyndham Int'l., Inc.*, 373 F.3d 537, 540 (4th Cir. 2004) (citation omitted). Moreover, the Fourth Circuit has held that an order granting a discovery request in an ancillary proceeding is not immediately appealable under the collateral order doctrine. *See Nicholas*, 373 F.3d 537 at 541 (citing *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 120-22 (4th Cir.1994)). Accordingly, the order on Retractable Technologies' motion to compel is an interlocutory order that may be reconsidered "as justice requires."

In reaching my determination, I may consider, but I am not bound by the factors set forth in Rule 60(b). *See Fayetteville Investors*, 936 F.2d at 1470. Under that rule, a court may grant relief from a judgment or order for, *inter alia*, excusable neglect. Fed. R. Civ. P. 60(b)(1). Although "the goal is to reach the correct judgment under law," I must also be mindful that "routine reconsideration of interlocutory orders would undermine judicial economy and respect for the finality of decisions." *Hinks v. Bd. of Educ. of Hartford County*, No. WDQ-09-1672, 2010 WL 5087598, at *1 (D. Md. Dec. 7, 2010) (quotation omitted).

**A.**

As an initial matter, I observe that the Center could not prevail under the standard required for relief under Rules 59(e) or 60(b).[1]  I further note that the Center has repeatedly missed opportunities to voice its objections to the subpoena in issue.  It could have sought relief as early as March, when service of the subpoena was complete.  It could have filed a timely response to the motion to compel.  Rather, it brought the instant motion nearly four months after being served the subpoena, two weeks after its response to the motion to compel was due under Local Rule 11(c), three days after it had agreed to file a response to the motion to compel, and merely six weeks before Retractable Technologies' expert witness disclosures are due in the underlying action, on September 5, 2011.  Furthermore, it has not complied with this court's order of June 30.  And it has not produced any documents in accordance with the subpoena.  Standing alone, this conduct counsels strongly against granting the relief sought.  *See Robinson v. Wix Filtration Corp LLC*, 599 F.3d 403, 413 (4th Cir. 2010) (finding that a party cannot show "excusable neglect" under Rule 60(b)(1) if it "fails to act with diligence[.]").

Moreover, the Center has not produced any evidence to support its claims that failing to grant its motion would (a) jeopardize confidential research; (b) subject the center to overly burdensome document production; or (c) require disclosure of irrelevant information concerning BD's relationship with the Center.

---

[1] Under Rule 59(e), the Fourth Circuit has recognized three grounds for granting relief: "(1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice."  *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010).  None of these are applicable here.  In addition, "motions under [Rule 59] may not be used 'to raise arguments which could have been raised prior to the issuance of the judgment [.]'" *Fernandez-Pineiro v. Bausch & Lomb, Inc.*, No. 10-1566, 2011 WL 1654347, at *3 (4th Cir. Apr. 29, 2011) (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).  Rule 60(b) allows for reconsideration of a final order where the movant shows "excusable neglect" or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6).  In seeking reconsideration under the catch-all provision, the movant must show "extraordinary circumstances."  *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  In seeking reconsideration under the "excusable neglect" standard, a party cannot succeed if it "fails to act with diligence. . . ."  *Robinson*, 599 F.3d at 413.

**1.**

The Center contends that paragraphs 1-21 of the subpoena seek confidential research that should not be disclosed. Pursuant to Rule 45(c)(3)(B), on motion of a party, the court "may" quash a subpoena if it requires "disclosing . . . a trade secret or other confidential research." In applying this rule, courts have adopted a balancing approaching, weighing the need for the confidential information against the harm that would result from disclosure. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1270 (7th Cir. 1982).

Where, as here, academic research is dependent upon promises of confidentiality to research participants, courts have been solicitous of Rule 45(c)(3)(B) movants. *See id.* However, quashing a subpoena is inappropriate where confidentiality interests can be safeguarded by means of a protective order. *See, e.g., Deitchman v. E.R. Squibb & Sons. Inc*, 740 F.2d 556, 559-60 (7th Cir. 1984). A protective order has been filed in the underlying case. Paragraph I(A) of that order provides in relevant part that "any third party who objects to making discovery except pursuant to a Protective Order shall have the right to designate as CONFIDENTIAL any document or other tangible items relevant to this litigation[.]" Paragraph II sets forth restrictions on use of items marked "CONFIDENTIAL." The Center may seek refuge in the protective order, and it has offered no cogent argument that the protective order would be ineffective in safeguarding its interests. Therefore, it appears that any harm to confidentiality interests that would result from compliance with the subpoena in this case would be minimal.

At a hearing on the instant motion, counsel for the Center proffered that the Center does not "systematically" track product-specific data of the type that Retractable Technologies seeks,

5

or "require" hospitals to provide such information. It therefore argues that the discovery sought is irrelevant to the underlying action, and that the balance tips in favor of protecting confidentiality. This objection is not well taken. There is no dispute that the form the Center sends to hospitals to collect EPINet data contains a blank for the specific product involved in reported needlestick accidents. Moreover, the database tool that the Center distributes to hospitals contains a field for the product type. Furthermore, it is evident that the Center has produced memoranda discussing product-specific data in the past. *See* Opp'n Br. Exs. A-8, A-9, A-10. It is immaterial whether the Center systematically tracks, or "requires" this data, because it clearly possesses it to some extent. It therefore appears that the subpoena is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In light of the foregoing, and in consideration of the Center's delay in raising any objection, the Center's confidentiality arguments fail to show that justice requires reconsideration of the motion to compel.

**2.**

The Center also objects that the discovery sought would be unduly burdensome because the subpoena seeks an overly broad set of documents, speeches, and presentations that the Center has produced over the course of its twenty-year history. "On timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c) (3)(A)(iv). Although the term "timely" is not defined, four and a half months after the return date of the subpoena is clearly not timely. On the other hand, a court "may, on motion, quash or modify the subpoena" for the reasons set forth in Rule 45(c)(3)(B). However, these reasons do not include undue burden.

In any event, the Center has not shown any undue burden.[2] It contends that the subpoena's overbreadth is evident on its face, and that the Center need not provide any additional evidence of the burden it would have to confront if ordered to comply. I disagree. First, the categories of documents sought pertain to needlestick injuries and BD's relationship with the Center, which are of evident importance to the underlying action. Second, the Center keeps much of its data in electronic files, which would take little effort to produce. Finally, the Center has provided no evidence of the quantity of documents sought. Twenty years worth of documents may be thousands, or hundreds of thousands of documents, depending on a host of factors about which I might only speculate. But I am constrained to rest my decision on the evidence, and there is simply no evidence of the burden that the Center faces. The conclusory assertion that the discovery sought is unreasonable will not carry the Center's motion.[3]

**3.**

Finally, the Center contends that requests related to the Center's relationship with BD are irrelevant to the underlying action. It protests that it is wholly free from the influence of BD. But Retractable Technologies intends to contest precisely this point, and it need not take the Center at its word. Furthermore, there is reason to believe that the Center's claim may not bear scrutiny. As noted, BD provides nearly a third of the outside funding that the Center receives, and has endowed a chair at the Center.[4] In addition, one of the memoranda that the Center produced in earlier discovery includes what appears to be an inadvertently copied note stating "Per Bob Atkins," who is an attorney for BD, "[m]ay use to attempt to show collection of brand

---

[2] While the Center correctly notes that Rule 45(c)(1) ordinarily places the burden on the party seeking discovery to avoid exposing persons to undue burden, this matter is before the court on the Center's motion for reconsideration.
[3] The Center also seeks to shield itself from discovery because it has "no dog in the fight" as a non-party to the underlying action. *See* Reply Br. at 5 (citing *Cusumano*, 162 F.3d at 717). However, for reasons touched upon in part C, below, I am not persuaded by the Center's claim that it is a disinterested party
[4] The Center protests that BD does not provide the majority of its funding, and that BD's competitor has also endowed a chair at the Center. But it is clear that the Center has a significant stake in maintaining a good relationship with BD given the substantial support that BD provides.

specific data." Opp'n Br. Ex. A-9. It is therefore clear that the Center has collaborated with BD's attorneys. Moreover, for reasons that have not been explained, BD's trademarks and copyrights appear on many EPINet forms. As the extent to which BD may be collaborating with the Center is one of the very issues that Retractable Technologies intends to explore in the underlying litigation, Retractable Technologies may seek discovery concerning the relationship between BD and the Center. *See* Fed. R. Civ. P. 26(b)(1).

### III.

For the foregoing reasons, the Center's motion for reconsideration will be denied.

The Clerk of the Court is directed to send a certified copy of this opinion and the accompanying order to all counsel of record.

Entered this <u>11th</u> day of August, 2011.

                                                     NORMAN K. MOON
                                                     UNITED STATES DISTRICT JUDGE